UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| TERESA WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | No. CV-12-3025-FVS |
| | ) | |
| v. | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| CAROLYN W. COLVIN, Commissioner | ) | |
| of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BEFORE THE COURT** are cross-motions for summary judgment. (ECF Nos. 17, 21). Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Stephanie Lynn F. Kiley represents the Commissioner of Social Security (defendant). On February 4, 2013, plaintiff filed a reply. (ECF No. 24). After reviewing the administrative record and the briefs filed by the parties, the court **grants** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on December 7, 2006, alleging disability as of June 1, 2006 (Tr. 122). The application was denied initially  and on reconsideration.

---

[1]As of February 14, 2013, Carolyn W. Colvin succeeded Michael J. Astrue as Acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), Commissioner Carolyn W. Colvin is substituted as the defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405(g).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Administrative Law Judge (ALJ) Moira Ausems held a hearing on April 6, 2010 (Tr. 35-76), and issued an unfavorable decision on May 28, 2010 (Tr. 14-29).  The Appeals Council denied review on January 10, 2012 (Tr. 1-6).  The ALJ's May 2010 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 29, 2012.  (ECF No. 2).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on July 11, 1964, and was 41 years old on the alleged onset date (Tr. 122).  Plaintiff indicated she completed high school, attending special education classes from grades six through 12 (Tr. 59-60).  She has worked as a care provider and as an inspector at a diaper factory.  (Tr. 65-66; 148).  Plaintiff reported in her Disability Report that she stopped working on April 30, 2006, because she "took Meth" (Tr. 147).

At the administrative hearing, it was noted that plaintiff had an extensive background of drug use, but plaintiff testified she had been sober since October of 2006 (Tr. 40-41).  Plaintiff did, however, indicate she relapsed with Methamphetamine and pills about a month or two prior to the administrative hearing, in January or February of 2010 (Tr. 41-42).  She stated she had not used drugs since that time (Tr. 43).
///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1    Plaintiff indicated that after two separate sexual assaults
2    in 2005 (Tr. 46-47), she has difficultly being around people (Tr.
3    48).  In her Disability Report, plaintiff reported "I cannot be
4    around people because I get too nervous and shakey [sic] . . . I
5    have a hard time concentrating and remembering instructions . . .
6    I have a social phobia and am very depressed" (Tr. 147).  She
7    testified that she finds it difficult to go out and does not leave
8    her house very often (Tr. 50).  Plaintiff stated that this first
9    started when she began to stop using drugs in 2005 or 2006 (Tr.
10   60).  She also indicated she has nightmares, difficulty with
11   sleep, and poor energy (Tr. 61).

12   Plaintiff stated she spends a typical day sitting and
13   watching television, but indicated she is also able to do some
14   household chores (Tr. 53).  She testified she washes dishes every
15   day and vacuums about once a week (Tr. 54).  She also sweeps and
16   mops (Tr. 57).  She stated she walks her dog to the local grocery
17   store with her boyfriend about three times per week (Tr. 55).

18                   **SEQUENTIAL EVALUATION PROCESS**

19   The Social Security Act (the Act) defines disability as the
20   "inability to engage in any substantial gainful activity by reason
21   of any medically determinable physical or mental impairment which
22   can be expected to result in death or which has lasted or can be
23   expected to last for a continuous period of not less than twelve
24   months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also
25   provides that a plaintiff shall be determined to be under a
26   disability only if any impairments are of such severity that a
27   plaintiff is not only unable to do previous work but cannot,
28   considering plaintiff's age, education and work experiences,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  engage in any other substantial gainful work which exists in the

2  national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

3  Thus, the definition of disability consists of both medical and

4  vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

5  (9th Cir. 2001).

6      The Commissioner has established a five-step sequential

7  evaluation process for determining whether a person is disabled.

8  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person

9  is engaged in substantial gainful activities.  If so, benefits are

10 denied.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If

11 not, the decision maker proceeds to step two, which determines

12 whether plaintiff has a medically severe impairment or combination

13 of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),

14 416.920(a)(4)(ii).

15     If plaintiff does not have a severe impairment or combination

16 of impairments, the disability claim is denied.  If the impairment

17 is severe, the evaluation proceeds to the third step, which

18 compares plaintiff's impairment with a number of listed

19 impairments acknowledged by the Commissioner to be so severe as to

20 preclude substantial gainful activity.  20 C.F.R. §§

21 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P

22 App. 1.  If the impairment meets or equals one of the listed

23 impairments, plaintiff is conclusively presumed to be disabled.

24 If the impairment is not one conclusively presumed to be

25 disabling, the evaluation proceeds to the fourth step, which

26 determines whether the impairment prevents plaintiff from

27 performing work which was performed in the past.  If a plaintiff

28 is able to perform previous work, that plaintiff is deemed not

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

1   disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At

2   this step, plaintiff's residual functional capacity (RFC) is

3   considered.  If plaintiff cannot perform past relevant work, the

4   fifth and final step in the process determines whether plaintiff

5   is able to perform other work in the national economy in view of

6   plaintiff's residual functional capacity, age, education and past

7   work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v);

8   *Bowen v. Yuckert*, 482 U.S. 137 (1987).

9       The initial burden of proof rests upon plaintiff to establish

10  a *prima facie* case of entitlement to disability benefits.

11  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*

12  *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is

13  met once plaintiff establishes that a physical or mental

14  impairment prevents the performance of previous work.  The burden

15  then shifts, at step five, to the Commissioner to show that (1)

16  plaintiff can perform other substantial gainful activity and (2) a

17  "significant number of jobs exist in the national economy" which

18  plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

19  Cir. 1984).

20                          **STANDARD OF REVIEW**

21      Congress has provided a limited scope of judicial review of a

22  Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold

23  the Commissioner's decision, made through an ALJ, when the

24  determination is not based on legal error and is supported by

25  substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995

26  (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

27  1999).  "The [Commissioner's] determination that a plaintiff is

28  not disabled will be upheld if the findings of fact are supported

by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

   It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found that plaintiff had not engaged in substantial gainful activity since December 4, 2006, the application date (Tr. 16).  The ALJ determined, at step two, that plaintiff had the following severe impairments:  major depressive disorder; post-traumatic stress disorder; and methamphetamine dependence (Tr. 16).  At step three, the ALJ found plaintiff's impairments, alone and in combination, did not meet or medically equal one of the listed impairments (Tr. 17).  The ALJ assessed plaintiff's RFC and determined that plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations: she should only perform simple routine tasks; she should not perform work that involves anything other than superficial contact with the general public; and she should have no more than occasional contact with co-workers (Tr. 19).

At step four, the ALJ found that plaintiff has no past relevant work (Tr. 27).  At step five, the ALJ concluded that, considering plaintiff's age, education, work experience and RFC, and based on vocational expert testimony, there were jobs that exist in significant numbers in the national economy that plaintiff could perform (Tr. 27-28).  The ALJ thus determined that plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 4, 2006, the application date, through the date of the ALJ's decision (Tr. 28-29).

///

**ISSUES**

Plaintiff alleges the ALJ erred as follows:

1.  By improperly rejecting the opinions of plaintiff's treating and examining medical providers as well as the consultant from the Disability Determination Service (DDS);

2.  By improperly rejecting plaintiff's subjective complaints;

3.  By failing to fully and fairly develop the record; and

4.  By failing to meet her burden at step five.

(ECF No. 18 at 8-20).

**DISCUSSION**

**A.  Medical Evidence**

Plaintiff first contends that the ALJ improperly rejected the opinions of her medical providers and the DDS consultant. (ECF No. 18 at 10-16). Plaintiff specifically argues that the opinions of DSHS counselor Kathleen Schormann, social worker Gabriela Mondragon and DDS consultant Richard Borton, Ph.D., were rejected on impermissible grounds.

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of her familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

either a physical condition or the ultimate issue of disability."
*Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Andrews*, 53 F.3d at 1042-1043.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

As indicated above, the ALJ determined that plaintiff could perform a full range of work at all exertional levels but she should only perform simple routine tasks, not perform work that involves anything other than superficial contact with the general public, and have no more than occasional contact with co-workers (Tr. 19).  The undersigned finds this RFC determination is supported by substantial record evidence.  *See infra*.
///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

On September 25, 2008, a Psychological/Psychiatric Evaluation form was completed by Kathleen Schormann, M.H.P. (Tr. 377-380). Ms. Schormann reported the "relationship between psychiatric symptoms & alcohol/drug use is beyond the scope of this evaluator" (Tr. 378).  Yet, Ms. Schormann checked boxes indicating that plaintiff was "seriously disturbed", had several "marked" restrictions and had a "severe" limitations with respect to her ability to respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 378-380).

Ms. Schormann, a therapist, is not a physician.  Therefore, her testimony and opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations.  20 C.F.R. §§ 404.1513, 416.913.  Only acceptable medical sources can give medical opinions.  20 C.F.R. § 416.927(a)(2).  In any event, the ALJ properly concluded that without the expertise to glean the impact of substance use on mental health impairments, Ms. Schormann's notation of "marked" and "severe" limitations were unreliable (Tr. 24).  In addition, the degree of limitation assessed by Ms. Schormann on her one-time evaluation is inconsistent with the weight of the record evidence as more fully discussed below. *See infra.*

On August 19, 2009, M. Gabriela Mondragon, M.S.W., completed a Mental Residual Functional Capacity Assessment form indicating plaintiff had several "marked" limitations (Tr. 311-313).  On that same date, however, Ms. Mondragon also competed a Psychological/Psychiatric Evaluation form which concluded that plaintiff had only mild to moderate limitations and no "marked" functional limitations (Tr. 387-392).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Like Ms. Schormann, Ms. Mondragon is not "an acceptable medical source".  Moreover, in addition to the fact that her opinions on one check-box form are inconsistent with the weight of the record evidence, *see infra*, the conclusions marked on the two separate form reports regarding her one-time evaluation are inconsistent with one another.

Although plaintiff has provided authority for according weight to "other source" opinions like Ms. Schormann and Ms. Mondragon (ECF No. 18 at 14), the Social Security Ruling cited by plaintiff provides that "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion."  SSR 06-03p.  That is simply not the case in the instant matter.  Both Ms. Schormann and Ms. Mondragon saw plaintiff on only one occasion and merely filled out check-box[2] reports regarding their assessments.

The undersigned finds that the ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to the opinions of Ms. Schormann and Ms. Mondragon.

On February 8, 2007, Jay M. Toews, Ed.D., performed a psychiatric assessment of plaintiff (Tr. 236-240).  Plaintiff reported her primary problem as social phobia developed as a

---

[2]A check-box form is entitled to little weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

result of using drugs and ostensibly being tortured and assaulted (Tr. 236).  She stated she was fully independent for basic self-care and was capable of planning and preparing meals, doing a full range of housekeeping, doing laundry, shopping independently, balancing a checkbook and paying bills (Tr. 238-239).  Dr. Toews indicated plaintiff displayed "an obvious disability-seeking motivation" and it appeared she was exaggerating symptoms other than substance related problems (Tr. 239).  He determined that plaintiff's problems stem from a long history of substance abuse and that she may be experiencing prolonged withdrawal symptoms (Tr. 239).  Dr. Toews diagnosed Polysubstance Dependence, in self-reported early remission; rule out Polysubstance Abuse, active; and Probable Antisocial Personality Traits (Tr. 240).

The ALJ appropriately found Dr. Toews' "acceptable medical source opinion" persuasive.  His opinion is supported by objective testing, is consistent with the objective medical evidence of record, and is not contradicted by an opinion from an acceptable medical source (Tr. 26).

On March 6, 2007, Richard Borton, Ph.D., a state agency reviewing psychologist, opined that plaintiff had some moderate functional limitations, but retained the ability to understand and remember simple, routine instructions, should be able to manage a normal workday with typical breaks for the majority of the time, and would retain the ability to engage in work that does not involve extensive contact with the public or multiple, changing coworkers (Tr. 242-243).  Dr. Borton's opinion was affirmed by state agency reviewing psychologist Rita Flanagan, Ph.D., on August 28, 2007 (Tr. 264).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Contrary to plaintiff's assertion, the ALJ accorded weight to the state agency reviewing physician opinions (Tr. 26) and included Dr. Borton's social limitations in her RFC determination by finding that plaintiff would be limited to superficial contact with the general public and no more than occasional contact with co-workers (Tr. 19). The ALJ appropriately accounted for the limitations assessed by Dr. Borton in this case.

On August 23, 2007, plaintiff was seen by Philip D. Rodenberger, M.D., at Yakima Neighborhood Health Services (Tr. 285). Dr. Rodenberger diagnosed Post-Traumatic Stress Disorder, Depression, NOS, Mixed Anxiety Disorder, and History of Polysubstance Abuse (Tr. 285). Dr. Rodenberger gave plaintiff a global assessment of functioning (GAF) score of 60, indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

On October 5, 2007, plaintiff was seen by Fady Sabry, M.D., at Yakima Neighborhood Health Services (Tr. 282). Dr. Sabry indicated plaintiff's medical history was significant for depression and post-traumatic disorder, but that she was doing well on medication (Tr. 282). On March 2, 2009, and July 1, 2009, Dr. Sabry saw plaintiff for follow-up exams (Tr. 294, 296-298). It was noted that plaintiff was "feeling better" on medication (Tr. 297) and "feeling better and doing well" (Tr. 294).

On February 13, 2008, Lisa Vickers, ARNP, completed a psychiatric evaluation of plaintiff (Tr. 315-317). Plaintiff reported to Ms. Vickers that medications prescribed by Dr. Rodenberger had "worked quite well" and her mood was notably

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

better, as well as her sleep, mind racing and anxiety (Tr. 316).
On April 9, 2008, plaintiff was seen by Ms. Vickers for a follow-up exam (Tr. 364-366).  Ms. Vickers indicated that plaintiff seemed to be managing fairly well (Tr. 365).

On February 11, 2010, Kathleen A. Mack, ARNP, completed a psychiatric evaluation of plaintiff (Tr. 419-421).  It was noted that plaintiff had recanted a recent statement that her boyfriend had been abusing her and prostituting her (Tr. 420).  She indicated that she said those things because she was under the influence of methamphetamine during a recent relapse (Tr. 420).  Now that she had once again quit using methamphetamine, "she believes that was her imagination" (Tr. 420).  Ms. Mack's mental status exam showed plaintiff was alert, cooperative, coherent and goal directed with a stable mood (Tr. 22-23; 420).  Ms. Mack noted there was no impairment of memory or intellectual functioning and that plaintiff's insight and judgment were fair (Tr. 420-421).

The opinions of Drs. Rodenberger and Sabry and Ms. Vickers and Ms. Mack reflect no greater limitations than those assessed in the ALJ's RFC determination.

The ALJ provided specific, legitimate reasons supported by substantial evidence for giving little weight to the opinions of Ms. Schormann and Ms. Mondragon, and the ALJ's RFC determination, which accounts for social limitations (Tr. 19), is supported by the reports of Drs. Toews, Borton, Flanagan, Rodenberger, and Sabry, and Ms. Vickers and Ms. Mack.  The medical evidence of record does not support more a restrictive RFC assessment in this case.  The ALJ's RFC determination is in accord with the weight of the record evidence and free of legal error.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

**B.  Plaintiff's Credibility**

Plaintiff next asserts that the ALJ erred by failing to properly consider plaintiff's subjective complaints.  (ECF No. 18 at 16-18).  Plaintiff argues that the ALJ failed to state convincing reasons to reject her testimony.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms she has alleged, particularly during periods of active substance abuse; however, plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 21).

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1    As indicated by the ALJ, the medical source statement

2    completed by Dr. Toews noted plaintiff displayed "obvious

3    disability-seeking motivation", and Dr. Toews opined that

4    plaintiff appeared to be exaggerating her symptoms (Tr. 25; 239).

5    Accordingly, there is affirmative evidence of malingering in this

6    case.

7        The ALJ indicated that the record is replete with missed

8    mental health appointments (Tr. 21).   Noncompliance with medical

9    care or unexplained or inadequately explained reasons for failing

10   to seek medical treatment cast doubt on a claimant's subjective

11   complaints.   20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885

12   F.2d 597, 603 (9th Cir. 1989).   The ALJ's notation of plaintiff's

13   repeated missed mental health appointments is an appropriate

14   factor to consider in weighing plaintiff's credibility.

15       The ALJ additionally noted that the record reveals that

16   plaintiff was an unreliable historian, especially with respect to

17   her substance use (Tr. 24).   Untruthfulness or inconsistencies

18   regarding alcohol or substance abuse has been held to support an

19   ALJ's decision that a claimant's testimony lacks credibility.

20   *Veruzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).   The ALJ

21   appropriately considered plaintiff's inconsistent reporting with

22   respect to her substance use to discount her claim of disabling

23   limitations.

24       The ALJ further noted that there is a general lack of

25   clinical findings to support plaintiff's alleged limitations and

26   restrictions (Tr. 21).   As discussed in Section A, the ALJ

27   correctly concluded that the objective medical evidence does not

28   support plaintiff's allegations of disabling limitations.   *Supra.*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

        Lastly, the ALJ indicated plaintiff's inconsistent reporting
of information suggests the information she provides may not be
entirely reliable (Tr. 25).  Inconsistencies in a disability
claimant's testimony supports a decision by the ALJ that a
claimant lacks credibility with respect to her claim of disabling
pain.  *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

        The ALJ is responsible for reviewing the evidence and
resolving conflicts or ambiguities in testimony.  *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the
trier of fact, not this court, to resolve conflicts in evidence.
*Richardson,* 402 U.S. at 400.  The court has a limited role in
determining whether the ALJ's decision is supported by substantial
evidence and may not substitute its own judgment for that of the
ALJ even if it might justifiably have reached a different result
upon de novo review.  42 U.S.C. § 405(g).

        After reviewing the record, the undersigned finds that the
reasons provided by the ALJ for discounting plaintiff's subjective
complaints are clear, convincing, and fully supported by the
record.  Accordingly, the ALJ did not err by concluding that
plaintiff's subjective complaints regarding the extent of her
functional limitations were not fully credible in this case.

**C.  Develop the Record**

        Plaintiff next contends that the ALJ erred by failing to
fully and fairly develop the record in this case.  (ECF No. 18 at
18-19).  She asserts that the ALJ's failure to order further
consultative examinations prejudiced her with respect to a full
and fair consideration of her claim by the ALJ.

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

The ALJ must scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts, being especially diligent to ensure favorable as well as unfavorable facts are elicited.  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992). If a claimant can demonstrate prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record, the decision may be set aside.  *Vidal v. Harris*, 637 F.2d 710, 713 (9th Cir. 1991).  Accordingly, with respect to the ALJ's duty to fully and fairly develop the record, the Ninth Circuit places the burden of proving prejudice or unfairness on the plaintiff.  The undersigned finds that plaintiff has not met this burden.

As discussed above, the ALJ appropriately considered the credible evidence of record in this case and developed a RFC assessment that is supported by substantial evidence.  Because the record was sufficient to support the ALJ's RFC determination, a further consultative examination was unnecessary.  Plaintiff has failed to demonstrate any prejudice or unfairness with respect to the ALJ's duty to fully and fairly developed the record.

**D.  Step Five**

Because the undersigned finds that the ALJ's evaluation of the evidence is appropriate and the ALJ's RFC determination is supported by substantial evidence, plaintiff's argument that the hypothetical presented to the vocational expert was incomplete is without merit.

With regard to plaintiff's specific assertion that the ALJ failed to provide in her hypothetical the additional limitation assessed by Dr. Borton that the individual could not be exposed to multiple, changing co-workers (ECF No. 18 at 20), when asked to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

include this limitation in the hypothetical, the vocational expert testified that only the job of hand packager tended to have a fairly high turnover rate (Tr. 73).  However, the vocational expert did not specifically eliminate the position from consideration, nor did the vocational expert indicate that such a limitation would have any effect on the other five positions he identified as jobs the hypothetical individual could perform (Tr. 67-72).  The ALJ did not err at step five in this case.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion for Summary Judgment (**ECF No. 21**) is **GRANTED.**

2.  Plaintiff's Motion for Summary Judgment (**ECF No. 17**) is **DENIED.**

**IT IS SO ORDERED.**  The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendant, and **CLOSE** this file.

**DATED** this ___10th___ day of July, 2013.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19